## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MALIBU MEDIA, LLC,**
                    Plaintiff,

                    v.

**JOHN DOE**,
                    Defendant.

Case No. 2:13-cv-11432-GAD-RSW

Assigned to:   Honorable Gershwin A. Drain
               United States District Judge

Referred to:   Honorable R. Steven Whalen
               United States Magistrate Judge

| | |
|---|---|
| Paul J. Nicoletti, Esq. (P44419)<br>Nicoletti & Associates, PLLC<br>36880 Woodward Ave, Suite 100<br>Bloomfield Hills, MI 48304<br>Tel: (248) 203-7800<br>Fax: (248) 203-7801<br>Email: paul@nicoletti-associates.com<br><br>Attorney for Plaintiff | Morgan E. Pietz (CA 260629)<br>THE PIETZ LAW FIRM<br>3770 Highland Ave., Ste. 206<br>Manhattan Beach, CA 90266<br>Tel: (310) 424-5557<br>Fax: (310) 546-5301<br>Email: mpietz@pietzlawfirm.com<br><br>Hattem A. Beydoun (P66071)<br>EPIC Law PLLC<br>PO BOX 32598<br>Detroit, Michigan 48232<br>Tel: (888) 715-8033<br>Fax: (313) 254-4923<br>Email: hbeydoun@epiclg.com<br><br>Attorneys for Defendant |

## JOHN DOE'S ANSWER TO (SEALED) AMENDED COMPLAINT [ECF NO. 32], AFFIRMATIVE DEFENSES, COUNTERCLAIM FOR DECLARATORY RELIEF, AND JURY DEMAND

- 1 -

*ANSWER*

The person who pays the Internet bill associated with IP address 69.244.145.197, i.e., the "John Doe subscriber," who plaintiff has accused of being the defendant in this action (hereafter "Doe") by and through his[1] attorney, hereby answers the operative sealed amended complaint in this action (ECF No. 32), as follows:

**Introduction**

1.      This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

**ANSWER**:    Admitted.

2.      Defendant is a persistent online infringer of Plaintiff's copyrights. Indeed, Defendant's IP address as set forth on Exhibit A was used to illegally distribute each of the copyrighted movies set forth on Exhibit B.

**ANSWER**:    Denied.

3.       Plaintiff is the registered owner of the copyrights set forth on Exhibit B (the "Copyrights-in-Suit.")

**ANSWER**:    Doe lacks sufficient knowledge or information to form a belief about the truth of this allegation, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

**Jurisdiction And Venue**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

---

[1] Per the Court's order granting leave to proceed anonymously, Doe is not identified by name; masculine pronouns are adopted for convenience, but Doe is not necessarily male.

**ANSWER**:    Doe lacks sufficient knowledge or information to form a belief about the truth of this allegation, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5). However, assuming that the plaintiff does indeed have registered copyrights at issue, Doe admits that subject matter jurisdiction would be proper.

5.    The Defendant's acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District, and therefore this Court has personal jurisdiction over the Defendant because (a) Defendant committed the tortious conduct alleged in this Complaint in this State, and (i) Defendant resides in this State and/or (ii) Defendant has engaged in substantial and not isolated business activity in this State.

**ANSWER**:    Doe admits that he resides in this judicial district and admits that personal jurisdiction is proper on this basis, but otherwise lacks sufficient knowledge or information to admit or deny, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) the Defendant resides (and therefore can be found) in this District and resides in this State; additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because each Defendant or Defendant's agent resides or may be found in this District.

**ANSWER**:    Doe admits that he resides in this judicial district and admits that venue is proper on this basis, but otherwise lacks sufficient knowledge or information to admit or deny the remaining allegations, and on that basis denies the remaining allegations.

**Parties**

7.      Plaintiff, Malibu Media, LLC, is a limited liability company organized and existing under the laws of the State of California and has its principal place of business located at 409 W. Olympic Blvd., Suite 501, Los Angeles, CA, 90015.

**ANSWER**:      Doe lacks sufficient knowledge or information to form a belief about the truth of this allegation, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

8.      [REDACTED TRUE NAME OF ALLEGED JOHN DOE] is an individual residing at [REDACTED STREET ADDRESS], Macomb, MI, 48044.

**ANSWER**:      Admitted.

**Factual Background**

*I.      Defendant Used the BitTorrent File Distribution Network To Infringe Plaintiff's Copyrights*

9.      The BitTorrent file distribution network ("BitTorrent") is one of the most common peer-to-peer file sharing venues used for distributing large amounts of data, including, but not limited to, digital movie files.

**ANSWER**:      As to the description of BitTorrent, admitted.

10.      BitTorrent's popularity stems from the ability of users to directly interact with each other in order to distribute a large file without creating a heavy load on any individual source computer and/or network. The methodology of BitTorrent allows users to interact directly with each other, thus avoiding the need for intermediary host websites which are subject to DMCA take down notices and potential regulatory enforcement actions.

**ANSWER**:      Admitted, except that Defendant lacks sufficient knowledge or information to admit or deny the implied allegation that BitTorrent does not utilize intermediary host websites and that BitTorrent is not subject to DMCA, and on that basis denies that portion of the allegation.

11.      In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces called bits. Users then exchange these small bits amongst each other instead of attempting to distribute a much larger digital file.

**ANSWER**:      Admitted, except that the small chunks that files are broken into are most typically called "pieces" in BitTorrent vernacular, not "bits."[2]

12.      After the infringer receives all of the bits of a digital media file, the infringer's BitTorrent client software reassembles the bits so that the file may be opened and utilized.

**ANSWER**:      Admitted, except that "bits" should read "pieces."

13.      Each bit of a BitTorrent file is assigned a unique cryptographic hash value.

**ANSWER**:      Admitted, except that "bits" should read "pieces" and a hash is not necessarily "unique."

14.      The cryptographic hash value of the bit ("bit hash") acts as that bit's unique digital fingerprint. Every digital file has one single possible cryptographic hash value correlating to it.

---

[2] Per the Merriam-Webster online dictionary: "Bit: a unit of computer information equivalent to the result of a choice between two alternatives (as *yes* or *no, on* or *off*)." (http://www.merriam-webster.com/dictionary/bit).  By contrast, for BitTorrent technology, a typical description of its functionality would be, "Each file to be distributed is divided into small information chunks called *pieces*."  (http://en.wikipedia.org/wiki/Torrent_file) (emphasis in original).  A BitTorrent "piece" would typically be made up of many "bits," with bits being the smallest unit of information that can be manipulated on a computer.  For further support of this subtle but potentially important semantic distinction, see Cohen, Braham (October 2002) "BitTorrent Protocol 1.0" (http://www.bittorrent.org/beps/bep_0003.html) (original document by BitTorrent's creator describing how BitTorrent protocol works); and http://en.wikipedia.org/wiki/BitTorrent#cite_note-Protocol1.0-6 ("The peer distributing a data file treats the file as a number of identically sized pieces, usually with byte sizes of a power of 2, and typically between 32 kB and 16 MB each. The peer creates a hash for each piece, using the SHA-1 hash function, and records it in the torrent file.")

The BitTorrent protocol utilizes cryptographic hash values to ensure each bit is properly routed amongst BitTorrent users as they engage in file sharing.

**ANSWER**:     Doe denies that assignment of a cryptographic hash value for each piece will necessarily be "unique" in every instance, as this avoids the documented problem of what are typically called hash collisions.  It is possible (although rare) for two unrelated pieces to have an identical cryptographic hash value, as a matter of pure coincidence. Doe admits that the BitTorrent protocol uses hash values in connection with routing pieces to BitTorrent users but otherwise lacks information to respond to the second sentence and on that basis denies.  Finally, again, "bits" should read "pieces."

15.     The entirety of the digital media file also has a unique cryptographic hash value ("file hash"), which acts as a digital fingerprint identifying the digital media file (e.g. a movie). Once infringers complete downloading all bits which comprise a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate.

**ANSWER**:     Doe denies that assignment of a cryptographic hash value will necessarily be "unique" in every instance, but otherwise admits this allegation.

16.     Plaintiff's investigator, IPP International UG, established a direct TCP/IP connection with the Defendant's IP address as set forth on Exhibit A.

**ANSWER**:     Doe lacks sufficient knowledge or information to form a belief about the truth of this allegation, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

17.     IPP International UG downloaded from Defendant one or more bits of each of the digital movie files identified by the file hashes on Exhibit A.

**ANSWER**:     Doe lacks sufficient knowledge or information to form a belief about the truth of this allegation, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

18.     Each of the cryptographic file hashes as set forth on Exhibit A correlates to copyrighted movies owned by Plaintiff as identified on Exhibit B.

**ANSWER**:     Doe lacks sufficient knowledge or information to form a belief about the truth of this allegation, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

19.     IPP International UG downloaded from Defendant one of more bits of each file has listed in Exhibit A. IPP International UG further downloaded a full copy of each file hash from the BitTorrent file distribution network and confirmed through independent calculation that the file hash matched what is listed on Exhibit A. IPP International UG then verified that the digital media file correlating to each file hash listed on Exhibit A contained a copy of a movie which is identical (or alternatively, strikingly similar or substantially similar) to the movie associated with that file hash on Exhibit A. At no time did IPP International UG upload Plaintiff's copyrighted content to any other BitTorrent user.

**ANSWER**:     Doe lacks sufficient knowledge or information to form a belief about the truth of this allegation, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

20.     IPP International UG downloaded from Defendant one or more bits of each digital media file as identified by its hash value on Exhibit A. The most recent TCP/IP connection between IPP and the Defendant's IP address for each file hash listed on Exhibit A is included within the column labeled Hit Date UTC. UTC refers to Universal Time which is utilized for air traffic control as well as computer forensic purposes.

**ANSWER**:     Doe lacks sufficient knowledge or information to form a belief about the truth of this allegation, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

21.     An overview of the Copyrights-in-Suit, including each hit date, date of first publication, registration date, and registration number issued by the United States Copyright Office is set forth on Exhibit B.

**ANSWER**:     Doe admits that the specified information, as alleged by plaintiff, is set forth on Exhibit B to the complaint, but lacks sufficient knowledge or information to admit or deny the truth of the information so asserted, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

22.     Defendant is the only person who can be identified as the infringer at this time.

**ANSWER**:     Doe lacks sufficient knowledge or information to form a belief about the truth of this allegation, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

### Miscellaneous

23.     All conditions precedent to bringing this action have occurred or been waived.

**ANSWER**:     Doe is unsure about what conditions precedent are being referred to here, and lacks sufficient knowledge or information to form a belief about the truth of this allegation, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

24.     Plaintiff has retained counsel and is obligated to pay said counsel a reasonable fee for its services.

**ANSWER**:     Doe admits that plaintiff has retained counsel, but lacks sufficient knowledge or information to form a belief about whether it is obligated to pay a fee that is "reasonable", and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

## COUNT I

### Direct Infringement Against Defendant

25.     The allegations contained in paragraphs 1-24 are hereby re-alleged as if fully set forth herein.

**ANSWER**:     Doe answers each such paragraph as set forth above.

26.     Plaintiff is the owner of the Copyrights-in-Suit, as outlined in Exhibit B, each of which covers an original work of authorship.

**ANSWER**:     Doe lacks sufficient knowledge or information to form a belief about the truth of this allegation, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

27.     By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit.

**ANSWER**:     Doe lacks sufficient knowledge or information to form a belief about the truth of this allegation, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

28.     Plaintiff did not authorize, permit or consent to Defendant's distribution of its works.

**ANSWER**:     Doe lacks sufficient knowledge or information to form a belief about the truth of this allegation, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

29.     As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A) Reproduce the works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B) Redistribute copies of the works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C) Perform the copyrighted works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the works' images in any sequence and/or by making the sounds accompanying the works

- 9 -

audible and transmitting said performance of the works, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publically" perform); and

(D) Display the copyrighted works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the works nonsequentially and transmitting said display of the works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

**ANSWER**:   Doe lacks sufficient knowledge or information to form a belief about the truth of this allegation, and therefore this allegation is deemed denied per Fed. R. Civ. P. 8(b)(5).

32.   Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

**ANSWER**:   Even if the facts of infringement and the liability of Doe were both hypothetically established by plaintiff, Doe would deny that any such infringement was willful.

[*The remainder of the complaint consists of a prayer for relief and a jury demand, responses to which are not required. Defendant's own prayer for relief and jury demand follow the counterclaim, infra.*]

### *AFFIRMATIVE DEFENSES*

Doe, by and through his attorney, states the following affirmative defenses to the complaint in this action, as supported by the following facts:

### Background Facts Relevant to Affirmative Defenses and Counterclaim

a.    Section 2257

1.     Malibu produces and/or distributes pornographic movies, most of which are available through the X-Art.com website.  The movies at issue feature young-looking people engaged in actual, graphic sexual intercourse.  The movies at issue have no plot, and very little, if any, dialogue.

2.     Malibu's movies, including the titles at issue in this lawsuit, are subject to the detailed record-keeping requirements of 18 U.S.C. § 2257 as implemented through regulations found at 28 C.F.R. § 75 et seq. ("Section 2257"),  a law designed to prevent child pornography by ensuring that porn producers keep and maintain records confirming that performers engaging in sexual conduct are at least 18 years old.  Violation of Section 2257 is a crime, punishable as a felony.  18 U.S.C. § 2257(i).  There is obviously a very strong public policy in favor of preventing child pornography and the exploitation of underage performers by the pornography industry.

3.     Recently, the Free Speech Coalition, an adult industry trade group, has campaigned (so far unsuccessfully) in the courts to have all or part of Section 2257 declared unconstitutional. In legal proceedings before Judge Baylson in the Eastern District of Pennsylvania, a variety of adult industry witnesses testified in 2013 to how difficult it is to consistently and fully comply with Section 2257 requirements.  *See Free Speech Coalition, Inc. v. Holder*, E.D. Pa. No. 2:09-cv-4607, ECF No. 229 (July 18, 2013) (Memorandum: Findings of Fact and Conclusions of Law) (summarizing testimony and finding Section 2257 is a content-neutral regulation on speech that

- 11 -

survived intermediate scrutiny).

4.     In order to comply with Section 2257 requirements, most smaller porn producers utilize professional, third-party custodians of records.  Larger porn companies sometimes do have specific people on staff that spend substantial time ensuring in-house compliance with the Section 2257's many requirements.

5.     Per the legal notice on the X-Art.com website as of November, 2013, Malibu, which is a relatively small porn company (although a prolific copyright litigant), does not utilize a professional, third-party custodian of records.  Rather, the custodian of records is identified as "B. Field, 409 W. Olympic Blvd., Suite 501, Los Angeles, CA 90015."  Presumably this means Brigham Field, who is Malibu's founder.

6.     According to testimony from Malibu's other founder, Collette Field, Malibu Media does not put the required Section 2257 notice either prior to the beginning of the movie or in the end credits of its movies.  Instead, Malibu apparently believes that its movies are exempt from 28 C.F.R. 75.8(b)–(c), and that it successfully and fully complies with the notice location requirement by putting a notice at the footer of its website, as contemplated in 28 C.F.R. 75.8(d).  In support of this assertion, a portion of Ms. Field's testimony on this topic, from the so-called bellwether trial, is attached hereto as Exhibit A.

7.     Doe is informed and believes and on that basis alleges that record-keeping requirements for on-camera pornography performers are much less stringent for talent overseas than in the U.S.

8.     Doe is informed and believes and on that basis alleges that the problem of unscrupulous agents, managers, talent scouts and sometimes the performers themselves providing incomplete, insufficient or even fake identity documents is particularly acute with female

performers from former-Soviet-block countries, among other problem areas.

9.     Doe is informed and believes and on that basis alleges that many of the models performing sex acts in Malibu Media's copyrighted movies on X-Art.com appear to be young females, some of whom are marketed as "teens," and a substantial number of whom hail from former-Soviet-block countries, such as the Czech Republic, Slovakia, Russia, Hungary, and Romania.

10.     Doe is informed and believes and on that basis alleges that Malibu has in the past attempted to skirt and ignore work visa requirements for foreign female performers it brought to the US to work on its pornographic film shoots occurring in the Miami, FL and the greater Los Angeles, CA areas.

11.     Doe is informed and believes, based on the allegations in paragraphs 1 to 10 above, and on that basis alleges, that the Section 2257 records for certain of the pornographic movies at issue in the complaint in this action may be incomplete,  deficient, improperly-located, or even fabricated.

        b.     IPP and Guardaley

12.     Doe is informed and believes and on that basis alleges that Malibu's purported technical expert is described variously as "IPP Limited," and  "IPP International UG"  (together, "IPP").  This company is responsible for monitoring BitTorrent for infringement of its client's works (including for Malibu), and for collecting the computer forensic evidence that serves as the basis for this suit.

13.     IPP is actually nothing more than the continuation and alter-ego of a German company called Guardaley.

14.     IPP is Malibu Media's agent as relevant to copyright infringement.

- 13 -

15.     Doe is informed and believes and on that basis alleges that Guardaley was accused of wrongdoing in a German court and that Guardaley was found to be initially seeding its clients' content onto BitTorrent, i.e., operating a "honey pot". Doe is not clear on the specifics of Guardaley's wrongdoing or what the court specifically found, but is aware that there are documents, in German, relating to this issue.

16.     Many pornographic content producers and owners, including possibly Malibu Media, purposefully make certain content freely available on the Internet, both on streaming "tube" sites, and, sometimes, on BitTorrent.  The idea behind this strategy is to generate interest in a particular brand of content, and drive fans to pay for memberships or for premium content offered by the same brand.

17.     Doe is informed and believes, based on the allegations in paragraphs 12 to 16 above, as well as other information, and on that basis alleges, that IPP is responsible for initially seeding some of Malibu's content onto BitTorrent in the first place.

18.     Doe is informed and believes, based on the allegations in paragraphs 12 to 16 above, as well as other information, and on that basis alleges, that IPP International UG is responsible for facilitating infringing downloads by BitTorrent users.

## FIRST DEFENSE:

### Unclean Hands

19.     Doe re-alleges the facts contained in paragraphs 1 to 18, above, as though fully set forth here.

20.     To the extent that any of the copyrights in suit in this action correspond to pornographic films that were feloniously produced in violation of Section 2257, plaintiff has committed a serious transgression with respect to those films, and the transgression relates directly

- 14 -

to the subject matter (i.e., the pornographic movies) of the underlying infringement action here.

21.     Doe has been damaged by plaintiff's conduct, in the form of incurring special damage attorneys' fees, to the extent Doe is now defending claims that correspond to movies which were feloniously produced by plaintiff in violation of Section 2257.

22.     In addition, to the extent Malibu Media or its agent IPP seeded any of the copyrighted movies onto BitTorrent in the first place, or facilitated any alleged infringement by Doe, they have essentially committed the civil equivalent of entrapment, which is an appropriate basis for an unclean hands defense.

23.     Accordingly, the doctrine of unclean hands should be an equitable defense for Doe in this case barring plaintiff's recovery on each and every film for which plaintiff failed to comply with Section 2257 and for each and every film that plaintiff or its agents seeded onto BitTorrent or facilitated the distribution thereof.

## SECOND DEFENSE:

### Copyright Misuse

24.     Doe re-alleges the facts contained in paragraphs 1 to 18, above, as though fully set forth here.

25.     Malibu Media's copyrights in suit do not "promote the Progress of Science and useful Arts," which is the policy underlying the grant of a copyright. The policy underlying the grant of a copyright does not extend to incentivizing the creation and monetization of child pornography, and copyright misuse has been allowed in equitable as well as anti-trust contexts.

26.     To the extent Malibu Media seeks to enforce copyrights for movies feloniously produced in violation of Section 2257, it does so in violation of the strong public policy supporting Section 2257, which is designed to prevent child pornography.

27.     Accordingly, the doctrine of copyright misuse should be an equitable defense for Doe in this case barring plaintiff's recovery on each and every film for which plaintiff failed to comply with Section 2257.

## THIRD DEFENSE:

### Estoppel

28.     Doe re-alleges the facts contained in paragraphs 1 to 18, above, as though fully set forth here.

29.     To the extent that plaintiff or its agents, including IPP, freely distributed any of the copyrights in suit on the Internet, or seeded any of the copyrights in suit onto BitTorrent in the first place, thus baiting the trap, plaintiff induced BitTorrent users to believe that such content was being freely distributed further to the kind of marketing strategy described above in ¶ 16.

30.     To the extent that plaintiff or its agents, including IPP, freely distributed any of the copyrights in suit on the Internet, or seeded any of the copyrights in suit onto BitTorrent in the first place BitTorrent users including Doe would have been justified in relying on such actions in order to conclude that the material was being made freely available, and that downloading it would not subject them to suit for infringement.

31.     Accordingly, plaintiff should be equitably estopped from recovering for infringement for any copyrighted movies that plaintiff or its agents, including IPP, seeded onto BitTorrent, or for any infringing downloads its facilitated.

## FOURTH DEFENSE:

### Implied License

32.     Doe re-alleges the facts contained in paragraphs 1 to 28, above, as though fully set forth here.

- 16 -

33.     To the extent that plaintiff or its agents, including IPP, seeded any of the copyrighted movies at issue onto BitTorrent in the first place, a license for the royalty free download of that movie should be implied.

34.     To the extent that plaintiff or its agents, including IPP, facilitated the download of any of copyrighted moves at issue by providing pieces of the movies to peers in the BitTorrent swarm, a license for the royalty free download of that piece should be implied.

## FIFTH DEFENSE:

### Innocent Intent

(17 U.S.C. § 504(c)(2))

35.     Doe re-alleges the facts contained in paragraphs 1 to 28, above, as though fully set forth here.

36.     Plaintiff's Damages, if any, are limited because Doe was not aware and had no reason to believe that Doe's acts constituted an infringement of copyright.

## SIXTH DEFENSE:

### No Volitional Conduct

37.     Doe re-alleges the facts contained in paragraphs 1 to 28, above, as though fully set forth here.

38.     Plaintiff's claims are barred in whole or in part because Doe did not engage in any volitional conduct.

39.     Defendant is informed and believes that someone on his network or someone using his computer without his knowledge or consent may be responsible for the downloads at issue.

## SEVENTH DEFENSE:

### Unconstitutionality of Statutory Damages

40.     Doe re-alleges the facts contained in paragraphs 1 to 28, above, as though fully set forth here.

41.     As applied to mass-scale BitTorrent copyright infringement cases, the statutory damages mandated by the Copyright Act which could be applied might be unconstitutional.  When the plaintiff's actual damages are unlikely to hit four digits, but statutory damages can extend to the millions, this raises an issue of the deprivation of the Constitutional right to due process and equal protection.

## EIGHTH DEFENSE:

### Misuse by Others

42.     Doe re-alleges the facts contained in paragraphs 1 to 28, above, as though fully set forth here.

43.     Plaintiff's claims are barred in whole or in part because the harm alleged by plaintiff may have resulted from the misuse of defendants' Internet network or computers by some person not reasonably expected by Doe.

## NINTH DEFENSE:

### Intervening Acts

44.     Doe re-alleges the facts contained in paragraphs 1 to 28, above, as though fully set forth here.

45.     The damages complained of may have been the result of intervening actions of others and were not proximately caused by the actions or omissions of Doe.

- 18 -

**TENTH DEFENSE:**

**Knowledge, Consent, and Acquiescence**

46.     Doe re-alleges the facts contained in paragraphs 1 to 28, above, as though fully set forth here.

47.     Plaintiff's claims are barred in whole or in part by plaintiff's knowledge, consent and acquiescence, with respect to a continuing series of BitTorrent infringement which plaintiff was aware about and in fact took steps to help facilitate.

**ELEVENTH DEFENSE:**

**Fair Use**

48.     Doe re-alleges the facts contained in paragraphs 1 to 28, above, as though fully set forth here.

49.     Plaintiff's claims are barred in whole or in part by the doctrine of fair use in that Does use of any works, if any, was non-commercial, and given that the work was of a kind that is routinely shared for free by many pornographers.

**TWELFTH DEFENSE:**

***De Minimis* Infringement**

50.     Doe re-alleges the facts contained in paragraphs 1 to 28, above, as though fully set forth here.

51.     Plaintiff's claims are barred in that any copying or other violations of rights which may have occurred was *de minimus*.  Specifically, if plaintiff's proof is limited to showing that a "piece" of a file, constituting perhaps a few frames lasting a fraction of a second, was downloaded by someone on Doe's network, but the whole file was never assembled such that anyone could actually play the file, such infringement would be *de minimis*.

## **THIRTEENTH DEFENSE:**

### **Laches**

52.     Doe re-alleges the facts contained in paragraphs 1 to 28, above, as though fully set forth here.

53.     Plaintiff, through IPP, has been aware of and has been monitoring BitTorrent usage for alleged infringement of its works since at least 2012.

54.     Between the time plaintiff first became aware of a series of continuing infringements on BitTorrent for the copyrights in suit to the time plaintiff filed suit against defendant here, there was an unreasonable and inexcusable delay.

55.     Plaintiff, in failing to take timely action on its known rights, acquiesced to further infringement of the copyrights in suit via the BitTorrent network.

56.     Defendant was prejudiced by plaintiff's unreasonable and unexcused delay.

//

### *COUNTERCLAIM FOR DECLARATORY RELIEF*

The anonymous person who pays the Internet bill associated with IP address 69.244.145.197, i.e., the "John Doe subscriber," who plaintiff has accused of being the defendant in this action (hereafter "Doe") by and through his attorney, hereby asserts a counterclaim against plaintiff Malibu Media, LLC ("Malibu"), as follows:

### Nature of the Case

1.      This is a declaratory relief cause of action, which seeks a declaration that four of the affirmative defenses raised by Doe in answering the underlying complaint—specifically: unclean hands, copyright misuse, estoppel, and implied license—are meritorious, such that plaintiff cannot prevail in a suit for copyright infringement.

2.      This counterclaim does not merely exactly mirror the underlying complaint by plaintiff for infringement.  Instead, defendant asserts certain affirmative defenses, which can stand on their own and be tried separately, even if plaintiff attempts to dismiss the underlying complaint in a way that does not create a prevailing party.  This counterclaim is intended to be similar to a counterclaim seeking a declaration that a patent is invalid.

### Parties

3.      Doe, the defendant in the underlying action and the counter-claimant here, is an individual who has been sued by Malibu for copyright infringement.  He resides in this judicial district.

4.      Doe is informed and believes and on that basis alleges that Malibu is a limited liability company organized under the laws of the state of California, with its principal place of business in Los Angeles, California.

**Jurisdiction and Venue**

5.      Subject to Doe's affirmative defenses and denials above, Doe is informed and believes and on that basis alleges that this Court has jurisdiction over the subject matter pursuant to plaintiff's allegation of copyright infringement, which is a federal question (assuming the plaintiff has registered copyrights).  Further, the counter-claim is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and the Copyright Act, 17 U.S.C. § 101, *et seq*. The Court has subject matter jurisdiction over the counterclaim pursuant to 28 U.S.C. §§ 1331 and 1338.

6.      Personal jurisdiction lies in this judicial district because Doe resides here and Malibu has filed numerous infringement suits here, including the underlying action.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Doe resides here and Malibu has filed numerous infringement suits here, including the underlying action.

**Background Facts Relevant to Affirmative Defenses and Counterclaim[3]**

a.      Section 2257

8.      Malibu produces and/or distributes pornographic movies, most of which are available through the X-Art.com website.  The movies at issue feature young-looking people engaged in actual, graphic sexual intercourse.  The movies at issue have no plot, and very little, if any, dialogue.

9.      Malibu's movies, including the titles at issue in this lawsuit, are subject to the detailed record-keeping requirements of 18 U.S.C. § 2257 as implemented through regulations found at 28 C.F.R. § 75 et seq. ("Section 2257"),  a law designed to prevent child pornography by

---

[3] Paragraphs 8 to 25 of the counterclaim, *infra*, are identical to paragraphs 1 to 18 of the affirmative defenses, *supra*.

ensuring that porn producers keep and maintain records confirming that performers engaging in sexual conduct are at least 18 years old.  Violation of Section 2257 is a crime, punishable as a felony.  18 U.S.C. § 2257(i).  There is obviously a very strong public policy in favor of preventing child pornography and the exploitation of underage performers by the pornography industry.

10.     Recently, the Free Speech Coalition, an adult industry trade group, has campaigned (so far unsuccessfully) in the courts to have all or part of Section 2257 declared unconstitutional. In legal proceedings before Judge Baylson in the Eastern District of Pennsylvania, a variety of adult industry witnesses testified in 2013 to how difficult it is to consistently and fully comply with Section 2257 requirements.  *See Free Speech Coalition, Inc. v. Holder*, E.D. Pa. No. 2:09-cv-4607, ECF No. 229 (July 18, 2013) (Memorandum: Findings of Fact and Conclusions of Law) (summarizing testimony and finding Section 2257 is a content-neutral regulation on speech that survived intermediate scrutiny).

11.     In order to comply with Section 2257 requirements, most smaller porn producers utilize professional, third-party custodians of records.  Larger porn companies sometimes do have specific people on staff that spend substantial time ensuring in-house compliance with the Section 2257's many requirements.

12.     Per the legal notice on the X-Art.com website as of November, 2013, Malibu, which is a relatively small porn company (although a prolific copyright litigant), does not utilize a professional, third-party custodian of records.  Rather, the custodian of records is identified as "B. Field, 409 W. Olympic Blvd., Suite 501, Los Angeles, CA 90015."  Presumably this means Brigham Field, who is Malibu's founder.

13.     According to testimony from Malibu's other founder, Collette Field, Malibu Media does not put the required Section 2257 notice either prior to the beginning of the movie or in the

end credits of its movies. Instead, Malibu apparently believes that its movies are exempt from 28 C.F.R. 75.8(b)–(c), and that it successfully and fully complies with the notice location requirement by putting a notice at the footer of its website, as contemplated in 28 C.F.R. 75.8(d). In support of this assertion, a portion of Ms. Field's testimony on this topic, from the so-called bellwether trial is attached hereto as Exhibit A.

14.     Doe is informed and believes and on that basis alleges that record-keeping requirements for on-camera pornography performers are much less stringent for talent overseas than in the U.S.

15.     Doe is informed and believes and on that basis alleges that the problem of unscrupulous agents, managers, talent scouts and sometimes the performers themselves providing incomplete, insufficient or even fake identity documents is particularly acute with female performers from former-Soviet-block countries, among other problem areas.

16.     Doe is informed and believes and on that basis alleges that many of the models performing sex acts in Malibu Media's copyrighted movies on X-Art.com appear to be young females, some of whom are marketed as "teens," and a substantial number of whom hail from former-Soviet-block countries, such as the Czech Republic, Slovakia, Russia, Hungary, and Romania.

17.     Doe is informed and believes and on that basis alleges that Malibu has in the past attempted to skirt and ignore work visa requirements for foreign female performers it brought to the US to work on its pornographic film shoots occurring in the Miami, FL and the greater Los Angeles, CA areas.

18.     Doe is informed and believes, based on the allegations in paragraphs 1 to 10 above, and on that basis alleges, that the Section 2257 records for certain of the pornographic movies at

- 24 -

issue in the complaint in this action may be incomplete,  deficient, improperly-located, or even fabricated.

     b.  <u>IPP and Guardaley</u>

  19.  Doe is informed and believes and on that basis alleges that Malibu's purported technical expert is described variously as "IPP International UG," and "IPP International UG." (together, "IPP").  This company is responsible for monitoring BitTorrent for infringement of its client's works (including for Malibu), and for collecting the computer forensic evidence that serves as the basis for this suit.

  20.  IPP is actually nothing more than the continuation and alter-ego of a German company called Guardaley.

  21.  IPP is Malibu Media's agent as relevant to copyright infringement.

  22.  Doe is informed and believes and on that basis alleges that Guardaley was accused of wrongdoing in a German court and that Guardaley was found to be initially seeding its clients' content onto BitTorrent, i.e., operating a "honey pot". Doe is not clear on the specifics of Guardaley's wrongdoing or what the court specifically found, but is aware that there are documents, in German, relating to this issue.

  23.  Many pornographic content producers and owners, including possibly Malibu Media, purposefully make certain content freely available on the Internet, both on streaming "tube" sites, and, sometimes, on BitTorrent.  The idea behind this strategy is to generate interest in a particular brand of content, and drive fans to pay for memberships or for premium content offered by the same brand.

  24.  Doe is informed and believes, based on the allegations in paragraphs 12 to 16 above, as well as other information, and on that basis alleges, that IPP International UG is

- 25 -

responsible for initially seeding some of Malibu's content onto BitTorrent in the first place.

25.     Doe is informed and believes, based on the allegations in paragraphs 12 to 16 above, as well as other information, and on that basis alleges, that IPP International UG is responsible for facilitating infringing downloads by BitTorrent users.

## Counterclaim for Declaratory Judgment

26.     Doe re-alleges and incorporates by reference paragraphs 8 to 25 to this counterclaim, *supra*, as though fully set forth herein.

27.     An actual controversy under 28 U.S.C. § 2201 has arisen and now exists between Doe and plaintiff/counter-defendant Malibu relating to Does liability to Malibu for infringement, given the affirmative defenses asserted by Doe to the underlying complaint.

28.     In the underlying complaint, Malibu previously filed suit in this Court alleging that Doe infringed plaintiff's copyrights.  By answer, Doe asserted certain affirmative defenses to the complaint, which included unclean hands, copyright misuse, estoppel, and implied license.

29.     Doe now seeks a judicial determination that his affirmative defenses to the underlying complaint of unclean hands, copyright misuse, estoppel, and implied license are meritorious and that Doe is therefore not liable to plaintiff for copyright infringement.

30.     Such determinations by this Court would be helpful not only in resolving the instant dispute between Doe and Malibu, but in foreclosing the possibility of future suits by Malibu, both against this defendant, and in similar suits affecting thousands of similarly situated defendants currently being sued by Malibu.

## Prayer for Relief

WHEREFORE, Doe requests entry of judgment in his favor on both plaintiff's underlying complaint and on the counterclaim for declaratory relief and prays that the Court:

- 26 -

A.      Dismiss Malibu's underlying complaint with prejudice;

B.      Declare that Doe is not liable to Malibu for infringement and that Malibu takes nothing;

C.      Find that some of the Section 2257 records for the movies at issue in the underlying complaint are incomplete, deficient or fake.  Doe also seeks a holding that this finding is sufficient to sustain an affirmative defense to infringement for Doe of copyright misuse, estoppel and/or unclean hands.

D.      Find that Malibu and/or its agent IPP are responsible for seeding some of Malibu's content onto BitTorrent.  Doe also seeks a holding that this finding is sufficient to sustain an affirmative defense to infringement for Doe of copyright misuse, estoppel and/or unclean hands.

E.      Award Doe his costs and attorneys fees to the extent allowed by law;

F.      Award Doe such other relief as is just and equitable.


### DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Doe demands a trial by jury on all issues so triable, for both the underlying action, and on the counterclaim.

Respectfully submitted,

DATED:       February 20, 2014


**THE PIETZ LAW FIRM**


*/s/ Morgan E. Pietz*


Morgan E. Pietz (Cal. Bar No. 260629)
3770 Highland Avenue, Suite 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:    (310) 424-5557
Facsimile:    (310) 546-5301

*Attorneys for Defendant John Doe*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of the Court using ECF, which will send notification of such filing to all attorneys of record.

/s/ Morgan E. Pietz
Morgan E. Pietz


Respectfully submitted,

DATED:       February 20, 2014